UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

INTEGON NATIONAL INSURANCE
COMPANY,

       Plaintiff,

       v.

FRANCISCO RODRIGUEZ,

       Defendant.

Civil Action No. 22-3280 (RK) (JBD)

**OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court upon the Motion for Summary Judgment filed by Plaintiff Integon National Insurance Company ("Plaintiff"). (ECF No. 22.) Defendant Francisco Rodriguez ("Defendant") filed an opposition to the Motion, (ECF Nos. 26, 28), and Plaintiff filed a reply, (ECF No. 31). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **DENIED**.

I.    **BACKGROUND**

    This matter arises from an insurance coverage dispute following a fire, which occurred on Defendant's property. Plaintiff issued a homeowner's insurance policy to Defendant (the "Policy"), covering the Defendant's "residence premises" at 183 Seaman St, New Brunswick, NJ 08901 (the "Premises"). (Defendant's Insurance Policy (the "Policy"), Ex. A to Decl. of Anthony Horan ("Horan Decl."), ECF No. 22-4 at 1-3.) The Policy was effective for a one-year period commencing on April 29, 2021. (*Id.* at 3.) The Policy contained a "residence premises" provision which required Defendant to reside at the Premises at the time of a covered incident in order to

obtain coverage. (*Id.* at 25.) On May 9, 2021, a fire occurred on the Premises, and Defendant submitted a claim for coverage to Plaintiff. (Horan Decl., ECF No. 22-3, ¶¶ 5, 7; ECF No. 22-12 at 2.)[1] Plaintiff investigated the claim and concluded that Defendant did not reside at the Premises at the time of the fire, and disclaimed coverage. (Horan Decl. ¶ 19; Disclaimer Letter, Ex. G to Horan Decl., ECF No. 22-10 at 2.)

Plaintiff filed this action against Defendant on May 31, 2022, seeking a declaratory judgment that the Defendant did not reside at the Premises at the time of the fire, and thus, not obligated to provide Defendant coverage under the Policy for the insurance claim submitted by Defendant. (ECF No. 1 at 6.) On July 19, 2022, Defendant filed an answer. (ECF No. 9.)The case proceeded through discovery, and thereafter Plaintiff filed its pending Motion for Summary Judgment, (the "Motion", ECF No. 22), supported by a brief, ("Pl.'s Br.", ECF No. 22-12), a Statement of Facts, ("Pl.'s SOF", ECF No. 22-11), and the declaration of Anthony Horan, a general adjuster for Plaintiff, with accompanying exhibits, (Horan Decl., ECF No. 22-3). Defendant opposed the Motion, filing a brief, ("Def.'s Br.", ECF No. 26), and an affidavit in opposition to the Motion, ("Def.'s Affd.", ECF No. 28).[2] Defendant did not submit any additional exhibits or a counter-statement of facts with his opposition. Plaintiff filed a reply brief. ("Pl.'s Reply Br.", ECF No. 31.)

---

[1] In Horan's Declaration, he states that Defendant reached out to him on May 10, 2018 and that the fire occurred at the Premises "on the prior day," but all other references to the date of the fire, in the record and Defendant's briefing, cite to May 9, 2021 as the date of the fire, so the Court assumes this reference to May 10, 2018 is a typographical error. (Horan Decl. ¶¶ 5, 7; Pl.'s SOF ¶ 5, 7; Def.'s Br. at 2.)

[2] Instead of filing a responsive statement of facts pursuant to Local Civil Rule 56.1, Defendant filed a "certification" that accompanied his response brief. (*See generally* Def.'s Affid.) This "certification" is functionally an affidavit filed by Defendant, as it contains new factual claims by Defendant with no citations to the record. *But see* Local Civ. R. 56.1(a) (requiring responsive statement of facts to contain citations "to the affidavits and other documents submitted in connection with the motion"). Accordingly, this Court refers to the "certification," not as a responsive statement of facts, but as an affidavit.

The thrust of Plaintiff's summary judgment argument is that no factual dispute exists because Defendant presents no evidence, beyond contradictory self-serving statements, to support his claim that he resided at the Premises at the time of the fire. (Pl.'s Br. at 6-7; Pl.'s Reply Br. at 2-4.) Because Defendant did not reside at the Premises on May 9, 2021, Plaintiff argues it appropriately disclaimed coverage under the Policy and is entitled to summary judgment on the matter. (*Id.*) Defendant disagrees and argues there is evidence in the record that creates a material factual dispute as to whether he lived at the Premises when the fire occurred, thus precluding summary judgment. (Def.'s Br. at 5.)

**A.    THE POLICY**

The following provisions from the Policy are relevant to the current motion. The Policy covers damage caused by "fire or lightning" to "the dwelling on the "residence premises" shown in the Declarations; including structures attached to the dwelling . . . ."  (Policy at 26, 29.) In the Policy, the "residence premises" lists "183 Seaman St, New Brunswick, NJ 08901." (*Id.* at 3.) Several subsections define what constitutes an "insured location." At its broadest, the Policy defines "insured location" as:

a. the "residence premises";

b. the part of other premises, other structures and grounds used by you as a residence; and

   (1) Which is shown in the Declarations; or

   (2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in a. or b. above;

d. Any part of a premises:

   (1) Not owned by an "insured"; and

   (2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

(*Id.* at 25.)

The policy further defines "residence premises" as:

a. The one family dwelling where you reside;

b. The two, three or four family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside; and which is shown as the "residence premises" in the Declarations.

(*Id.* at 26.)

### B.   DEFENDANT'S OWNERSHIP OF AND PRESENCE AT THE PROPERTY

As noted above, following the May 9, 2021 fire at the Premises, Defendant notified Plaintiff and requested coverage under the policy. (Pl.'s SOF ¶¶ 1–5 (citing Horan Decl. ¶ 5).) Thereafter, Plaintiff conducted its own investigation of the claim. (*Id.* ¶ 6.) As part of Plaintiff's investigation, Anthony Horan, Plaintiff's general adjuster, spoke to Defendant on May 11, 2021. (Horan Decl. ¶ 7.) During this conversation, Defendant informed Horan that he did not reside at the Premises and that the Premises was a "rental property, which was 100% tenant occupied." (*Id.*)[3] "After learning that he would not be entitled to coverage if he did not reside at the Premises," Defendant recanted his statement and said he lived on the Premises "on the second floor." (*Id.* ¶ 8; Pl.'s SOF ¶ 9.)

---

[3] The record references on several occasions that Defendant struggled to speak and understand English and required his son or a Spanish speaking interpreter to translate. (Def Dep. at 2:9-11, 18:16-17, 31:3-4; Meisberger Rep. at 3; Def.'s Affid. ¶ 6; Pl. Reply Br. at 4.) It is unclear from the record whether Defendant's son translated the conversation between Horan and Defendant as there is no reference in Horan's report of who translated; however, Plaintiff's reply brief states that Defendant's "conversations with the adjuster/investigator [i.e. Horan], [ ] were translated by his son." (*See generally* Horan Decl.; Pl. Reply Br. at 4.)

As part of the investigation, Plaintiff retained David Meisberger, a fire investigator, to help determine the cause and origin of the fire. (Rep. of David A. Meisberger ("Meisberger Rep."), Ex. B to Horan Decl., ECF No. 22-5 at 2.) Meisberger interviewed Defendant on May 12, 2021, with Defendant's son translating. (*Id.*) Defendant stated that "he resides on the *first* floor of the Premises but was in the attic in the evening at the time of the fire." (*Id.* at 4 (emphasis added).) The New Brunswick Fire Department interviewed the tenants of the Premises, who said Defendant "was listed as not living there and he happened to be in the attic at the time of the fire." (*Id.* at 5; *see also* New Brunswick Fire Dept. Rep. (the "Fire Dept. Rep."); Ex C. to Horan Decl., ECF No. 22-6 at 8 (stating that Defendant was the owner of the Premises and was at the Premises the night of the fire.)) Lastly, the fire report listed a different address at 169 Throop Ave, New Brunswick as Defendant's address. (Ex. C at 18.)

Plaintiff also submitted other evidence in the record pertaining to Defendant's residence. Defendant's 2019 and 2020 tax returns list the Premises as a "rental property" and a PO box as his residence. (2019 Tax Returns, Ex. D to Horan Decl., 22-7 at 5, 8; 2020 Tax Returns, Ex. E to Horan Decl., 22-8 at 3, 8.) Defendant's bank statements for May 2021 list "214, Hardy Street, New Brunswick, New Jersey" as his current residence. (Dep. Tr. Of Defendant ("Def. Dep."), Ex. F to Horan Decl., ECF No. 22-9 at 22: 16-19.) Defendant's license lists the same PO box as his tax returns for his address. (*Id.* at 21:2-4.)

In August 2021, Plaintiff interviewed Defendant, under oath and with a Spanish translator present. (*Id.* 1, 2:9-10.) During this examination, Defendant averred that his son set up his bank card and "was the one that put [the 214 Hardy Street] address." (*Id.* at 22: 13-18.) Defendant further testified he uses a PO box as his address on his taxes because "the mail gets misplaced [at the Premises.]" (*Id.* at 12:5-10.) Further, Plaintiff's attorney asked Defendant how many families lived

in the attic and he responded "no one lived there." (*Id.* 10:14-15.) Defendant stated that when the fire broke out, he was "in the roof" checking papers, which he later clarified as being in the attic. (*Id.* 13:15-24.) When asked where he lived on May 9, 2021, Defendant stated that he lived on the second floor where he had his own bedroom and personal belongings. (*Id.* at 16:12-22.)

In his interrogatory responses dated January 1, 2023, Defendant stated that he lived in the attic of the Premises on May 9, 2021. (Def.'s Interrog., Ex. 1 to Decl. of Amir M. Botros ("Botros Decl."), ECF No. 22-2 at 6.) Defendant explained that his prior inconsistent responses to investigators as to where he lived at the Premises resulted from "interpretation issues" because he "do[es] not speak English very well." (Def.'s Affid. ¶ 6.)

In May 2023, Defendant filed a brief and affidavit in response to Plaintiff's Motion, stating that he "was included in the fire report as having been in the building at the time of the fire because [he] was in the attic of [his] residence." (*Id.* ¶ 7.) In his affidavit Defendant stated that he "lived in the attic of [the Premises],…had a bathroom and shower in the basement," if he got hungry, "[he] would order food to go to [his] sister's house to eat," and he spends time out of the country but travels "back to New Jersey to visit [his] family, check[s] up with [his] doctor, tenants, and properties." (*Id.* ¶¶ 2, 3.) Defendant reiterated that any contradictory statement was "an interpretation issue because [he does] not speak English very well." (*Id.* ¶ 6.) In Defendant's brief, he states that he kept his belongings in the attic. (Def. Br. at 5.)

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that the Court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "view[] the facts in the light most favorable to the party against whom summary judgment was entered." *Marino v.*

*Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" about a fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." (*Id.*); *see also In re CitxCorp., Inc.* 448 F.3d 672, 677 (3d Cir. 2006) ("In order to create a genuine issue of material fact, a [party] must provide sufficient evidence to permit a factfinder to find in his favor at trial").

The party moving for summary judgment has the initial burden of establishing its right to summary judgment. *See Celotex Corp.*, 477 U.S. at 323. To show that a material fact is not genuinely disputed, it "must . . . cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The moving party may also meet its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Once the movant meets this threshold burden under Rule 56, the non-moving party must present evidence to establish a genuine issue as to a material fact. *See Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (holding that the non-movant "must do more than simply show that there is some metaphysical doubt as to material facts"); *see also Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (the non-moving party "must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").

"[T]he mere existence of a scintilla of evidence in support of the plaintiff's position would be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242, 252 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations, engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino*, 358 F.3d at 247 (quoting *Anderson*, 477 U.S. at 255).

## III.   **DISCUSSION**

The parties' arguments on summary judgment focus primarily on whether a genuine factual dispute exists as to whether Defendant lived on the Premises at the time of the fire.[4]

Plaintiff presents three arguments for why no genuine fact dispute exists and summary judgment should be granted. *First,* according to Plaintiff, its SOF should be deemed undisputed because Defendant failed to file a responsive material statement of fact ("SOF") pursuant to Local Civil Rule 56.1 ("R. 56.1"). (Pl.'s Reply Br. at 1–2.) Because Plaintiff's undisputed SOF states that Defendant did not reside at the Premises, no factual dispute exists. (*Id.*) *Second,* the "residence premises" requirement in the Policy is unambiguous and should be applied to bar Defendant's coverage because he did not reside at the Premises at the time of the fire. (Pl.'s Br. at 5–6.) *Third,* there is insufficient record evidence to corroborate Defendant's contradictory statements that he lived in the attic of the Premises at the time of the fire, and thus, such contradictory statements should be disregarded under the "sham affidavit doctrine." (*Id.* at 6-7; Pl.'s Reply Br. at 3–4.)

Defendant counters that there is evidence in the record to support his claims that he lived at the Premises when the fire occurred, creating a material factual dispute that precludes summary

---

[4] The parties appear to agree—as does the Court—that a factual dispute as to where Defendant lived at the time of the fire would be material, as the applicability of the Policy hinges on whether Defendant resided at the Premises. *See* (Def.'s Br. at 4; *see generally* Pl.'s Brief (containing no argument stating Defendant's residency is not material).)

judgment. (Def.'s Br. at 5.) The Court addresses each of Plaintiff's arguments in turn and finds that, in the light most favorable to the Defendant, the record contains sufficient evidence to create a material fact dispute that precludes summary judgment.

## A.  RULE 56.1 RESPONSIVE STATEMENT OF MATERIAL FACTS

Pursuant to R. 56.1, a movant for summary judgment must "furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." Local Civ. R. 56.1(a). The non-moving party must then furnish a responsive statement "addressing each paragraph of the movant's [statement of facts], indicating agreement or disagreement, and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion." *Id.* When the non-movant fails to file a responsive statement of facts pursuant to R. 56.1, the court may deem "any material fact not disputed [by the non-movant] [ ] undisputed for purposes of the summary judgment motion." *Id.*; *see also Hill v. Algor,* 85 F. Supp. 2d 391, 408 n. 26 (D.N.J. Jan. 18, 2000) ("[F]acts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted."); *Owens v. Am. Hardware Mut. Ins. Co.*, No. 11-6663 2012 WL 6761818 at *2 (D.N.J. Dec. 31, 2021) ("[A]s the rule makes clear, the nonmoving party must file its own Rule 56.1 statement . . . ."). While failure to file a responsive statement of facts is not necessarily fatal, absent compliance with R. 56.1, "the [c]ourt is left to sift through often voluminous submissions in search of-sometimes in vain-the undisputed material facts." *Owens,* 2012 WL 6761818, at *2–3 (D.N.J. Dec. 31, 2021).

However, the Third Circuit has cautioned against using R. 56.1 as a punishment. *See Boswell v. Eoon*, 452 F. App'x 107, 112 (3d Cir. 2011) ("[E]xcus[ing] the non-movant's failure to strictly comply with this local rule [and] permitting the non-movant to rely on its briefing and

evidentiary submissions to dispute the movant's purportedly undisputed material facts" because it is "consistent with the requirement at summary judgement that federal courts view the fact in the light most favorable to the non-moving party.") (quoting *Jakimas v. Hoffmann-La Roche. Inc.*, 485 F.3d 770, 777 (3d Cir. 2007)); *see also Dawidoicz v. Rutgers Univ.*, No. 18-3285, 2022 WL 17094833, at *1 (D.N.J. Nov. 21, 2022) (stating that "failure to comply with Local Civil Rule 56.1 is not fatal in and of itself").

Turning to Plaintiff's argument, Plaintiff cites the Court to *Callahan v. U.S. Postal Serv.*, where the non-moving party failed to submit a responsive SOF with his opposition papers and the court deemed the moving party's statement of material facts undisputed for summary judgment purposes. No. 13-3147, 2014 WL 2999066, at *2 (D.N.J. June 25, 2014). The *Callahan* court concluded that the non-moving party "failed to raise any material factual dispute and [ ] failed to defeat [the moving party's] motion for summary judgment." *Id*. The Court finds the instant case distinguishable from *Callahan*. Notably, the court in *Callahan* stated that even if the court "were to overlook [p]laintiff's failure to file a L. Civ. R. 56.1 statement," the court's "decision would be the same." (*Id.*)

Unlike *Callahan*, here, the evidentiary record outside of Plaintiff's SOF contains sufficient evidence to create a fact dispute. (*See* Def.'s Interrog. at 6; Policy at 1-3; Fire Dept. Rep. at 8) (record evidence that Defendant owned the Premises, purchased the Policy, was present in the attic of the Premises when the fire occurred, and Defendant testified to living in the attic of the Premises at the time of the fire). Further, while Plaintiff argues that the only conclusion the Court can draw from its undisputed SOF is that Defendant did not live on the premises, Plaintiff's SOF itself includes conflicting statements about Defendant's residency at the Premises on the night of the fire. (*Compare* Pl.'s SOF ¶¶ 9, 10 ("[Defendant] recanted his statement and said that he lived on

the second floor," and during a subsequent conversation, "[Defendant] stated that he rented one of the rooms from his tenants" at the Premises), *with Rodriguez v. United Prop. & Cas. Ins. Co.,* No. 18-16939, 2020 WL 13830350, at *2 (D.N.J. Apr. 29, 2020) (finding no dispute of material fact existed and granting summary judgment to defendant where defendant's statement of facts clearly stated that "[p]laintiff *never* lived on the [p]remises" and plaintiff failed to file a responsive statement of facts (emphasis added).)

After considering Defendant's submissions and the record evidence outside Plaintiff's SOF, the Court finds at least some objective evidence to corroborate Defendant's interrogatory response that he resided in the attic of the Premises at the time of the fire. (*See* Def.'s Interrog. at 6; Policy at 1-3; Fire Dept. Rep. at 8.) In the light most favorable to the Defendant, the fact that (1) he was present in the attic of the Premises at the time of the fire, (2) is the owner of the Premises and purchased the Policy for the Premises, and (3) explained that his contradictory responses to investigators as to where he lived was a function of his limited English language skills, is independent record evidence that disputes Plaintiff's SOF and supports Defendant's sworn self-serving statement that he lived in the attic of the Premises at the time of the fire. (*Id.*; Def.'s Affid. ¶ 6.)[5]  For these reasons, this Court does not find Defendant's failure to file a responsive SOF fatal, and the Court has endeavored to look beyond Defendant's procedural errors, finding Defendant's briefing and evidentiary submissions presents a fact dispute as to where Defendant resided. (*Id.*;

---

[5] In Defendant's response brief, he states for the first time that he "kept his personal belongings in the attic," (Def. Br. at 5), although no evidence in the record supports this assertion. Defendant cannot rely on factual claims raised for the first time in his briefings and legal memoranda with no citation to the record to defeat the Motion. *See Nat'l Ass'n for Advancement of Colored People v. Cty. of Phila.,* 834 F.3d 435, 440–41 (3d. Cir. 2016) (citing *Berckeley Inv. Grp., Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006) ("[D]espite non-moving party receiving the benefit of all factual inferences in the court's consideration on a motion for summary judgment, the nonmoving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").

*see also Dawidoicz*, 2022 WL 17094833, at *1.) Accordingly, the Court does not find Defendant's failure to file a responsive SOF mandates a grant of summary judgment.

### B. "RESIDENCE PREMISES" REQUIREMENT IS UNAMBIGUOUS

Turning to Defendant's second argument, under New Jersey law, "an insurance policy is a contract that will be enforced as written when its terms are clear" such that "the expectations of the parties will be fulfilled." *Flomerfelt v. Cardiello*, 997 A.2d 991, 996 (N.J. 2010). "[T]he words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias v. Allstate Ins. Co.*, 775 A.2d 1262, 1264 (N.J. 2001). Any ambiguity in the contract "is construed liberally in the insured's favor." *Longobardi v. Cubb Ins. Co. of N.J.*, 582 A.2d 1257, 1260 (N.J. 1990). However, "[i]n the absence of any ambiguity, courts should not write for the insured a better policy of insurance than the one purchased.'" *Id.* "A 'genuine ambiguity' arises only 'where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage.'" *Progressive Cas. Ins. Co. v. Hurley*, 765 A.2d 195, 202 (N.J. 2001) (quoting *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979)). "Exclusionary clauses are presumptively valid and are enforced if they are 'specific, plain, clear, prominent, and not contrary to public policy.'" *Flomerfelt*, 977 A.2d at 996 (quoting *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997)). Exclusionary clauses that proscribe or limit coverage should be "narrowly construed [with the] burden on the insurer to bring the case within the exclusion." *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1012 (N.J. 1998) (quoting *Princeton Ins. Co.*, 698 A.2d at 9).

In the instant case, the provision at issue in the Policy is the "residence premises" requirement, which the parties agree is an exclusionary clause. (Pl. Br. at 5.) The parties also agree that the Policy requires Defendant to "reside" at the Premises at the time of the fire to qualify for insurance coverage. (*See* Policy at 26.) Plaintiff argues that because the "residence premises"

requirement is unambiguous and valid, it should be enforced to bar coverage in the instant case. (Pl. Br. at 5.) In his briefing, Defendant does not claim that the "residence premises" requirement in the Policy is ambiguous or invalid. (*See generally* Def.'s Br.) Thus, the Court finds these arguments have been waived. *Woodell v. Coach*, No. 22-2222, 2022 WL 17486262, at *3 (D.N.J. Dec. 7, 2022) ("As [plaintiff] does not address these arguments in his opposition brief, any arguments in opposition are deemed waived." (citing *Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, No. 12-3375, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013))). Moreover, recently, a court in this district enforced an almost identical "residence premises" requirement to bar coverage under an insurance policy and found that policy unambiguous. *See Rodriguez*, 2020 WL 13830350 at *5–6 (finding that "the Policy unambiguously states that it only applies to premises where the insured resides.") While the Court agrees with Plaintiff that the "residence premises" requirement in the Policy is unambiguous, especially in light of Defendant's failure to argue otherwise, this does not mean Plaintiff is entitled to summary judgment. The Court must turn to whether Defendant "resided" at the Premises.[6]

    Whether an individual "resides" at a premises is a fact intensive inquiry. *See Gibson*, 730 A.2d at 1283 ("[W]hether a relative of a named insured is a resident of that insured's household

---

[6] Plaintiff cites to New Jersey cases where the court barred coverage under an insurance policy. (Pl.'s Br. at 5.) However, these cases are easily distinguishable from the instant matter. In *Iorio v. Simone*, the court found the contract unambiguous in excluding coverage for bodily injuries caused by an owned recreational vehicle off the insured premises. *See Iorio v. Simone*, 773 A.2d 722, 724 (N.J. Super. Ct. App. Div. 2001). The incident occurred on the public road and not on the insured premises, which was defined in the contract. *Id.* Unlike *Iorio*, where the court found the policy unambiguous as to off-premises incidents and that the incident occurred off premises, in the instant matter, as will be addressed further below, conflicting evidence exists as to whether Defendant resided at the Premises. (*Id.*; Def.'s Interrog. at 6; Policy at 1–3; Fire Dept. Rep. at 8). For the same reason, the instant case is also distinguished from *Rodriguez* where the record was undisputed that plaintiff never lived at the residence. *Compare* Pl.'s SOF (which states that "after learning he would not be entitled to coverage if he did not reside at the Premises, [Defendant] recanted his statement and said that he lived on the second floor") *with Rodriguez*, 2020 WL 13830350, at *2 (where defendant's SOF states that "[p]laintiff never lived on the Premises.").

'will depend on the facts of each case.'") (quoting *Sjoberg v. Rutgers Cas. Ins. Co.,* 615 A.2d 660, 662 (N.J. Super. Ct. App. Div. 1992)). When determining "residency," New Jersey courts consider "whether the person had his/her own bedroom, kept clothing and toiletries in the home," stored a car at the home, received mail, spent time, or was registered and insured at the address. *Sierfeld v. Sierfeld,* 997 A.2d 1028, 1034 (N.J. Super. Ct. App. Div. 2010) (citing *Arents v. General Accident Ins. Co.,* 655 A.2d 936, 939 (N.J. Super. Ct. App. Div. 1995); *see also Gibson,* 730 A.2d at 1284.[7]

Applying these factors to the instant case, Defendant, as the holder of the Policy was "registered and insured at the" Premises. (*See* Policy at 1–3.) Further, Defendant's interrogatories stated that he "lived in the attic," where he was present on the night of the fire. (Def. Interrog. ¶ 2; Def. Affid. ¶ 6; Meisberger Rep. at 4.) In his affidavit, Defendant explained that the language barrier is why he gave different answers as to where he lived on the Premises. (Def. Affid. ¶ 6; Def. Br. at 5.) While the remaining record evidence suggests that Defendant lived elsewhere (*e.g.* he receives mail at a PO Box, his bank statements list a different address, and his tax returns and license list a PO box as his residence), Defendant explains, under oath, why his license, tax returns, and bank accounts use a different address than the Premises. (*See* Def. Dep. at 12:5–10, 22:13–18.) Defendant also provided more detail about his living situation in the attic, claiming that he "had a bathroom and shower in the basement," if he got hungry, he would order food and eat at his sister's house, and that he spent time outside of the country but would travel back to New Jersey to check up on his properties and family. (Def. Affid. ¶¶ 2, 3.)

The determination of whether Defendant's explanations are to be believed is the province of the jury. *See Am. Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d 575, 581 (3d Cir. 2009) ("[i]n

---

[7] Plaintiff cites to several New York state and federal court cases to support the proposition that the "residence premises" provision should bar coverage in the instant case. (ECF No. 22-12 at 5–6.) However, "various state court decisions from jurisdictions other than New Jersey are not controlling on the issue of New Jersey law for obvious reasons." *Ronson v. Talesnick,* 33 F. Supp. 2d 347, 353 at n.10 (D.N.J. 1999).

determining whether [a] dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party."); *see also Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982) ("when there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties."); *see also Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 392 (3d Cir. 1998) ("Had the district court been sitting as the finder of fact, we would have little trouble in affirming its decision. However, at the summary judgment stage, the district court improperly weighed conflicting evidence in granting the defendants' motion . . . Accordingly, this court is constrained to reverse the district court's decision and remand for further proceedings."); *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991) ("Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed.").

Further, the Court must draw all reasonable inferences and doubts in favor of the non-movant; the non-movant need only present "*enough competent evidence*" to enable a favorable finding. *First Am. Bank v. SJP Grp., Inc. Emp. Stock Ownership Tr.*, No. 17-3778, 2018 WL 5722252, at *3 (D.N.J. Oct. 31, 2018)(emphasis added); *see also Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (reversing district court's grant of summary judgment because "instead of allowing a jury to decide which interpretation of the facts was correct, the district court chose . . . an interpretation that favors the movant over the non-movant"). Although it is a close call, the Court finds there is enough competent evidence in the record, in addition to Defendant's self-serving statements, when viewed in the light most favorable to Defendant, to create a genuine fact dispute. *See In re Lemington Home for the Aged,* 659 F.3d 282, 290 (3d Cir.

2011) ("For an issue to be genuine, 'all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'") (quoting *Anderson,* 477 U.S. at 248–49).

### C. CONTRADICTORY STATEMENTS AND SHAM AFFIDAVIT DOCTRINE

Turning to Plaintiff's argument regarding the "sham affidavit doctrine," in considering whether a genuine dispute of material fact exists, courts may disregard a party's contradictory statements or affidavits. *See Hackman v. Valley Fair,* 932 F.2d 239, 241 (3d Cir. 1991) (holding that "when, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists."); *see Patel v. Venerable Ins. And Annuity Co.*, No. 20-03226, 2021 WL 3828832 at *3, n. 3 (D.N.J. Aug. 26, 2021). Known as the sham affidavit doctrine, "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *Jiminez v. All Am. Rathskeller,* Inc., 503 F.3d 247, 251 (3d Cir. 2007). However, the Third Circuit observed that "not all contradictory affidavits are necessarily shams." *Id.* (citing *Baer v. Chase,* 392 F.3d 609, 624 (3d Cir. 2004)). "When there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." *Baer,* 392 F.3d at 625. Further, when an affiant offers a "satisfactory explanation" for the conflict between the prior deposition and the affidavit, courts will generally not disregard the affidavit. *See Hackman*, 932 F.2d at 241.

Plaintiff argues that the "sole evidence cited by [Defendant] is a self-serving affidavit submitted in opposition to this Motion" which should be disregarded as a sham because it contradicts Defendant's prior sworn testimony. (Pl.'s Reply Br. at 2.) The Court is not persuaded.

First, Defendant cited objective evidence from the fire report, which stated he was at the Premises on the night of the fire. (Fire Dept. Rep. at 6.) This record evidence, along with the objective facts that Defendant owns the Premises and purchased the Policy, support his statement that he resided in the attic of the Premises. (*See id.* at 6, 8.) Thus, Defendant's affidavit does not constitute the "sole evidence" cited by Defendant to support his contradictory statements. (*See id.*; Pl.'s Reply Br. at 2.) Further, Defendant explained that a language barrier resulted in his contradictory statements regarding where he lived on the night of the fire. (*See* Def.'s Affid. ¶ 6); *see also Jiminez,* 503 F.3d at 254 (holding an "affiant has the opportunity to offer a 'satisfactory explanation' for the conflicting statements) (citing *Hackman*, 932 F.2d at 241)). In light of the independent evidence in the record that supports Defendant's contradictory statements and Defendant's explanation as to same, the Court declines to apply the sham affidavit doctrine here. *See Jiminez,* 503 F.3d at 253 (noting courts are wary of applying the sham affidavit doctrine when independent evidence exists in the record to bolster a questionable claim because it ventures into the "weighing of the evidence" which is "impermissible at the summary judgement stage."); *see also U.S. v. Morris*, 561 F. App'x 180, 185 (3d Cir. 2014.) ("credibility determinations are reserved for the factfinder.")

While Defendant may fail to carry his burden at trial, the Court concludes Defendant has presented enough evidence to withstand summary judgment and send this case to a jury.[8]

---

[8] In its Reply Brief, Plaintiff argues for the first time that regardless of whether a factual dispute exists, Plaintiff is still entitled to summary judgment because the Policy only covers a two-dwelling residence and Defendant's claim that he lived in the attic converts the Premises into a three-dwelling residence. (Pl. Reply Br. at 4-5.) However, "a party cannot raise issues for the first time in a reply brief." *Stern v. Halligan*, 158 F.3d 729, 731 n. 3 (3d Cir. 1998); *see also Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 n. 3 (D.N.J. 1999) ("A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." (citing *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir. 1992) (refusing to consider an issue raised for the first time in a reply brief))); *see also Hoxworth v. Blinder, Robinson & Co., Inc.*, 903 F.2d 186, 204–05 n. 29 (3d Cir. 1990) (same); *Ballas v.*

## **CONCLUSION**

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**. An

appropriate Order will accompany this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: August 2, 2024

---

_Tedesco_, 41 F. Supp. 2d 531, 533 (D.N.J. 1999) (same); _D'Alessandro v. Bugler Tobacco Co._, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) (same). The Court will not address Plaintiff's argument raised for the first time in a Reply brief and finds the existence of a material fact dispute dispositive.